Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6434 | **DATE** | November 8, 2001 |
| **CASE TITLE** | American Bankcard v. Schlumberger | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  As to defendant's motion for summary judgment [22], the motion is granted as to Count II of the Complaint. The court requests further briefing on Count I. The memoranda should be submitted by November 29, 2001 and replies should be submitted by December 20, 2001. See attached for details. ENTER MEMORANDUM OPINION.

(11) X [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | NOV 15 2001 | |
| | Notified counsel by telephone. | | date docketed | 36 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | 01 NOV 14 PM 5:02 | docketing deputy initials | |
| | Copy to _____ | | | |
| | | | date mailed notice | |
| KAM | courtroom deputy's initials | | KAM | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

99-6434.011-JCD                                                November 8, 2001

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DOCKETED

NOV 1 9 2001

| | |
|---|---|
| AMERICAN BANKCARD INTERNATIONAL, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 99 C 6434 |
| SCHLUMBERGER TECHNOLOGIES, INC., | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Before the court is defendant's motion for summary judgment and other relief. For the reasons explained below, the motion is granted as to Count II of the Complaint. Further briefing is requested regarding Count I.

## BACKGROUND

Plaintiff, American Bankcard International, Inc. ("ABI"), brings this action for breach of contract and fraudulent inducement in connection with an agreement it entered into with defendant Schlumberger Technologies, Inc. ("Schlumberger") to buy credit card processing terminals.

The following relevant facts are undisputed. On August 4, 1997, Digital Merchant Systems, Inc. ("DMS"), ABI's predecessor,[1]

---

[1] Digital Merchant Systems, Inc. ("DMS") was an Illinois corporation that merged into ABI in 1998. Plaintiff's Response to Rule 56.1 Statement of Uncontested Facts, ¶ 2.

entered into a written contract with Schlumberger entitled the "Schlumberger Associate Program Agreement" (the "Agreement"), which included an Addendum A containing modifications. Schlumberger had initially proposed a modified version of its standard "Associate Program Agreement" to DMS. The parties then negotiated and eventually modified several terms of the contract. Sam Buchbinder, who was then chief executive of DMS, was DMS's primary negotiator of the Agreement. Buchbinder had prior experience buying credit card processing terminals. The essence of the Agreement (subject to certain conditions) was that DMS would purchase a minimum of 20,000 credit card processing terminals from Schlumberger. DMS intended to resell or lease the terminals to its merchant customers.

DMS initially had been interested in purchasing a credit card processing terminal known as the "Magic 6000." However, because that model was not ready for production at the time the parties entered into the Agreement, DMS agreed to purchase "Magic 9000" terminals until the "Magic 6000" terminals were ready. DMS was aware that the Magic 9000 terminals had not been used in the United States. Plaintiff contends that Schlumberger told DMS that those terminals were "certified" on several authorization networks in the United States, that Schlumberger had sold them to other customers in North America, and that they were in use in France and "running at 99.9 percent [reliability]." Plaintiff also alleges that

Schlumberger failed to disclose to DMS that Schlumberger's customers in Canada and France were having extensive problems with the Magic 9000 terminals.

In the summer of 1998, DMS merged with ABI. By that time, hundreds of new Magic 9000 terminals were being sent to ABI's merchant customers.[2] The merchants experienced numerous problems with the terminals related to both the hardware and the software. Schlumberger made efforts to fix those problems. ABI contends that the problems were never completely resolved and that it eventually had to "swap" the Magic 9000 terminals for those of another supplier. In October 1999, ABI returned to Schlumberger its inventory of Schlumberger-manufactured terminals. ABI never sent notice of termination of the Agreement, but it no longer sells Schlumberger terminals.

ABI originally filed this action in the Circuit Court of Cook County, seeking damages in excess of $10,000,000, plus punitive damages and costs. Count I of the Complaint alleges that Schlumberger breached the Agreement--specifically, the provision warranting that the terminals would be free from defects in material and workmanship. Count II alleges that Schlumberger made various fraudulent representations that induced plaintiff to enter into the Agreement.

---

[2] Between February 1998 and January 1999, Schlumberger sent ABI approximately 5000 terminals.

On October 1, 1999, Schlumberger removed the action to this court on the basis of diversity jurisdiction, and later filed counterclaims for breach of contract. Schlumberger now moves for summary judgment on Count II (fraud) and also moves for an order specifying that its total liability for breach of contract (Count I) is limited to the purchase price of the goods, pursuant to the Agreement.

## **DISCUSSION**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Talanda v. KFC Nat'l Management Co., 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its]

favor on a material question." <u>McGrath v. Gillis</u>, 44 F.3d 567, 569 (7th Cir. 1995).

A.  **Count II -- Fraudulent Inducement Claim**

To state a fraudulent inducement claim, a plaintiff must allege that (1) the defendant made a false statement of material fact; (2) the defendant knew or believed that the statement was false; (3) the statement was intended to induce plaintiff's reliance; (4) the statement did induce reasonable reliance; and (5) the statement caused damage to plaintiff. See <u>Jankousky v. Jewel Companies, Inc.</u>, 182 Ill. App. 3d 763, 766, 538 N.E.2d 689, 691 (1st Dist. 1989).

Schlumberger argues that ABI's fraud claim must be dismissed because ABI has failed to allege reasonable reliance on the purported misrepresentations. The Agreement states that "[ABI] has not relied on any representations, oral or written, except as are made in or expressly referenced herein." (Defendant's Rule 56.1 Statement of Uncontested Facts, Ex. A, Agreement, ¶ 17.4.) Schlumberger contends that the presence of this provision precludes ABI's reasonable reliance on the alleged pre-contractual misrepresentations regarding the terminals, citing the Seventh Circuit's decision in <u>Rissman v. Rissman</u>, 213 F.3d 381 (7th Cir. 2000).

In <u>Rissman</u>, the plaintiff, a former minority shareholder of Tiger Electronics, sued the majority shareholder for securities

fraud after the company was sold for far more than plaintiff was paid for his stock. 213 F.3d at 382. The plaintiff alleged that defendant fraudulently induced him to sell his stock by assuring him that Tiger Electronics would not be sold. See id. However, as part of the stock transaction, plaintiff represented that he had not relied on any prior oral statement. In affirming the district court's grant of summary judgment for the defendant, the Seventh Circuit held that "a written anti-reliance clause precludes any claim of deceit by prior representations." Id. at 384. The court reasoned that a non-reliance clause "ensures that both the transaction and any subsequent litigation proceed on the basis of the parties' writings, which are less subject to the vagaries of memory and the risks of fabrication." Id.

Judge Rovner, concurring, explained that a non-reliance clause will be determinative in most cases, but that the court's holding was not an "automatic rule" because an analysis of the circumstances surrounding the transaction is necessary. See id. at 388-89. The court must ask certain questions about the context in which the written agreement was reached: Did the plaintiff have the capacity and opportunity to read the contract? Is the disclaimer clear? Was there a fiduciary relationship between the parties? Was the plaintiff experienced in such transactions? Did the parties negotiate the terms of the contract? See id.

ABI attempts to distinguish <u>Rissman</u> by arguing that there, "specific language in the sales contract specifically negated the alleged representation," and here it does not. (Plaintiff's Memorandum at 14.) ABI is incorrect. The non-reliance clause in <u>Rissman</u> is no more specific than the clause at issue in this case. Therefore, <u>Rissman</u> controls our analysis. ABI also attempts to avoid application of <u>Rissman</u> by contending that Schlumberger committed post-contractual fraud; however, ABI did not plead this in the Complaint.

Here, the evidence shows that plaintiff clearly had the capacity and opportunity to read the contract; in fact, plaintiff successfully negotiated several modifications to Schlumberger's standard form "Associate Program Agreement." In addition, plaintiff does not dispute that Buchbinder, who negotiated the contract with Schlumberger, had prior experience buying credit card terminals. The Agreement was negotiated at arms' length; there is no evidence that the parties had a fiduciary relationship that would dispel plaintiff's duty of self-protection. Furthermore, the disclaimer is clear and is not "buried" in the Agreement, as the Agreement is just 17 pages long, with wide margins and ample spacing between paragraphs.³ Accordingly, given the circumstances surrounding the Agreement's negotiation and execution, we conclude that the non-reliance clause renders any reliance on Schlumberger's

---

3/ Including the exhibits and addendum, the Agreement is 20 pages long.

alleged prior statements unreasonable.[4] Summary judgment for defendant on Count II thus is appropriate.

B. **Count I -- Breach of Contract Claim**

Schlumberger argues that ABI's remedy for breach of contract is limited to the purchase price of the terminals, pursuant to the Agreement, and moves for an order specifying that this is uncontroverted.[5]

Paragraph 8.1 of the Agreement reads as follows:

Except as defined herein, [ABI's] exclusive remedy and SCHLUMBERGER's total liability for any and all losses and damages from any cause whatsoever arising from or related to this contract (whether such cause be based in contract, negligence, strict liability, tort, or otherwise) will in no event exceed the purchase price of the Products and Licensed Programs in respect to which such cause arises.

---

[4] Because we are granting summary judgment on this ground, we need not address Schlumberger's alternative argument that the purported misrepresentations are not actionable because they are general product recommendations and relate to future or contingent events.

[5] While judgment as a matter of law on a portion of a single claim is not an option under the Federal Rules, a district court may, pursuant to Rule 56(d), issue an order "specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy." Fed. R. Civ. P. 56(d); see also Occidental Fire & Cas. Co. v. Continental Bank N.A., 918 F.2d 1312, 1320 (7th Cir. 1990) (noting that under Rule 56(d) the trial court may enter a binding order "listing the facts that are not in dispute"); U.S. ex rel. Ramm Plumbing Co. v. Wil-Freds Constr., Inc., 1997 WL 391456, No. 96 C 793, at *4 (N.D. Ill. July 7, 1997) (Grady, J.). Although this pretrial procedure is sometimes labeled "partial summary judgment," it is actually interlocutory in nature. Capitol Records, Inc. v. Progress Record Distrib., Inc., 106 F.R.D. 25, 29 (N.D. Ill. 1985); see also EEOC v. Sears, Roebuck & Co., 839 F.2d 302, 353 n.53 (7th Cir. 1988) (noting that "the phrase 'partial summary judgment' is typically a misnomer used to describe a pretrial order under [Rule] 56(d)" because such an order "is definitely interlocutory and nonappealable"). The purpose of this procedure is twofold: to salvage some of the judicial effort involved in the denial of a motion for summary judgment and to streamline the litigation process by narrowing the triable issues. Lovejoy Electronics, Inc. v. O'Berto, 616 F. Supp. 1464, 1473 (N.D. Ill. 1985) (citing, inter alia, Yale Transp. Corp. v. Yellow Truck & Coach Mfg., 3 F.R.D. 440, 441 (S.D.N.Y. 1944)).

(Defendant's Rule 56.1 Statement of Uncontested Facts, Ex. A, Agreement, ¶ 8.1.) Schlumberger contends that consequently, ABI's exclusive remedy is the total purchase price paid by ABI for the terminals and related equipment. Schlumberger acknowledges that such exclusive remedy provisions are unenforceable if they "fail their essential purpose," see General Motors Acceptance Corp. v. Jankowitz, 523 A.2d 695 (N.J. Super. Ct. App. Div. 1987),[6] but argues that ABI has not produced any evidence to show that the remedy failed its essential purpose.

ABI argues that other remedies, such as repair or replacement, are referenced in the Agreement, and thus the remedy provided in ¶ 8.1 is "supplemental" to, rather than exclusive of, the other remedies. ABI contends that ¶ 8.1 contemplates that other provisions of the Agreement may provide remedies additional to the purported "exclusive" remedy of refund of purchase price because the paragraph begins with the phrase "[e]xcept as defined herein." ABI also points out that, "as the drafter of the form contract, [Schlumberger] could certainly have included clearer language if it intended at the time of contracting to limit the Plaintiff's remedy in a way it now argues." (Plaintiff's Memorandum at 5.)

Because it does appear to us that the phrase "except as defined herein" renders ¶ 8.1 somewhat ambiguous, we are inclined

---

[6]/ The parties agree that, pursuant to the Agreement, New Jersey law applies to the contract issue.

to deny defendant' motion as to Count I. However, we do not have the benefit of defendant's view of the effect of the phrase because defendant has declined to address the issue in both its memorandum in support of its motion and in its reply brief. Accordingly, we are not prepared to decide the issue of summary judgment as to Count I. The court would like further briefing on this issue, so the parties will be allowed to file cross-memoranda on the effect of the phrase "[e]xcept as defined herein" contained in ¶ 8.1 of the Agreement.

**CONCLUSION**

For the foregoing reasons, summary judgment for defendant Schlumberger is granted as to Count II of the Complaint (fraud). The court will reconsider the appropriateness of summary judgment on Count I (breach of contract) after receiving cross-memoranda from the parties. The memoranda should be submitted by November 29, 2001 and replies should be submitted by December 20, 2001.

DATE: November 8, 2001

ENTER: _____
John F. Grady, United States District Judge